UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 1:13-cv-24148-UU

ERIC NARBONA,

    Plaintiff,

v.

GOLD COAST BEVERAGE DISTRIBUTORS, INC.,

    Defendant.
_____/

## OMNIBUS ORDER

THIS CAUSE comes before the Court upon Gold Coast's Motion for Summary Judgment, (D.E. 21), and Plaintiff's Motion to Strike, (D.E. 26).

THE COURT has considered the motions and the pertinent portions of the record, and is otherwise fully advised in the premises. Gold Coast Beverage Distributors, Inc. ("Gold Coast") argues that Plaintiff's employment is subject to the Motor Carrier Exemption of the Fair Labor Standards Act as a matter of law. In response, Plaintiff argues that Gold Coast waived that defense by failing to assert it in its Answer as an affirmative defense. Plaintiff further argues that, in any event, summary judgment should not be entered for Gold Coast on the basis of the exemption because the affidavit of Joaquin Goicoechea, on which Gold Coast heavily relies to establish the exemption's applicability, should be stricken pursuant to Rule 37, Fed. R. Civ. P. due to Gold Coast's failure to disclose Goicoechea as a witness during discovery. The motions have been fully briefed and are ripe for determination.

## WAIVER

The Motor Carrier Exemption to the overtime provision of the Fair Labor Standards Act

("FLSA") is codified at 29 U.S.C. 213(b)(1). Plaintiff initially argues in response to Gold Coast's motion for summary judgment that Gold Coast waived this affirmative defense when it failed to specifically invoke the defense in its answer. Gold Coast's answer states, "Plaintiff's claims are barred in whole or in part to the extent that the work he performed falls within the exemptions provided for in Section 13(a) and/or (b) of the FLSA, 29 U.S.C. § 213(a) or (b)." D.E. 3 at ¶ 8.

While Gold Coast's allegation that section 213(b)(1) applies may be conclusory, Plaintiff was given explicit notice on February 12, 2014, almost three months before the discovery deadline, that Gold Coast would pursue the Motor Carrier Exemption affirmative defense. D.E. 43 at 3. Indeed, Plaintiff even sought evidence pertinent to this defense during discovery. *See* Barsky Dep. at 24:16–26:1. Under these circumstances, Plaintiff fails to show any prejudice from Gold Coast's reliance on the Motor Carrier Exemption. *See Easterwood v. CSX Transp., Inc.*, 933 F.2d 1548, 1551 (11th Cir. 1991) *aff'd,* 507 U.S. 658, 113 S. Ct. 1732, 123 L. Ed. 2d 387 (1993) ("[W]e have been reluctant to enforce strictly the harsh waiver requirement where the plaintiff is unable to demonstrate any prejudice due to the lack of notice."). Accordingly, the Court will not deem the defense waived. *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1319 (S.D. Fla. 2005) ("Where a defendant pleads generally that a plaintiff is not covered under the FLSA, but fails to identify the specific FLSA exemptions that are applicable, the defendant should be given leave to amend the defense.").

## GOICOECHEA AFFIDAVIT

As noted above, Gold Coast's motion for summary judgment relies heavily on the affidavit of Joaquin Goicoechea. Goicoechea is Gold Coast's fleet manager. Plaintiff moves to

strike the affidavit because Goicoechea was not listed in Gold Coast's initial disclosures as a person who possessed discoverable information. Under Federal Rule of Civil Procedure 26(a), "a party must, without awaiting a discovery request, provide to the other parties the name and, if known, the address and telephone number of each individual likely to have discoverable information–along with the subjects of that information–that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(I). Further, "a party who has made a disclosure under Rule 26(a) ... must supplement or correct the disclosure ... in a timely manner if the party learns that in some material respect the disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). And "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

Here, though Goicoechea was not disclosed as a potential witness in Gold Coast's initial disclosures, Gold Coast satisfied Rule 26 by identifying Goicoechea as a person who might possess discoverable information in a writing sent to Plaintiff on April 15, 2014. In that writing, Gold Coast communicated to Plaintiff that Goicoechea was the fleet manager and a potential witness regarding Gold Coast's transportation practices.[1] D.E. 14-1; D.E. 34-1. This put Plaintiff on notice that Goicoechea possessed knowledge in the nature of that to which he swore in his affidavit. *See Brown v. Chertoff*, 406CV002, 2009 WL 50163 (S.D. Ga. Jan. 7, 2009) *aff'd sub nom. Brown v. Napolitano*, 380 F. App'x 832 (11th Cir. 2010) (denying a motion to strike a

---

[1] Plaintiff omits the fact of this correspondence from his motion.

declaration where the identify of the witness was disclosed in a response to an interrogatory, notwithstanding that the movant was "surprised" by the content of the declaration). Having put Plaintiff on notice, the onus was on Plaintiff to depose Goicoechea. *Id.* ("Nothing in the text of Rules 26(a)(1) or 26(e) requires a party to disclose all the information that a witness may possess. Rather, 26(a)(1) only requires disclosure of the 'subjects of' information known to a potential witness.").

Further, and notwithstanding Plaintiff's assertion to the contrary, Plaintiff has not shown any undue prejudice from Gold Coast's reliance on Goicoechea's affidavit. Specifically, Plaintiff fails to explain why he was unable to depose Goicoechea in the 17 days between the April 15, 2014, correspondence disclosing Goicoechea as a potential witness and the May 2, 2014, discovery deadline.[2] And even if Plaintiff was unable to depose Goicoechea within those 17 days, Plaintiff neither sought an extension of time from the Court nor agreement from Gold Coast to depose Goicoechea out of time. Accordingly, because Plaintiff has failed to show a violation of Rule 26 or any prejudice therefrom, the Court will not strike Joaquin Goicoechea's affidavit.

## SUMMARY JUDGMENT

Turning next to the substance of Gold Coast's Motion for Summary Judgment, the following facts are not in dispute unless otherwise indicated:[3]

---

[2] In the correspondence disclosing Goicoechea as a potential witness, Gold Coast offered to arrange for a deposition of Goicoechea on April 30, 2014, along with other depositions previously scheduled for that day. Plaintiff never responded to this offer.

[3] Plaintiff disputes several facts without reference to record evidence. The Court treats these facts as undisputed for purposes of ruling on Gold Coast's motion for summary judgment. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record ... .").

Gold Coast is a beverage wholesaler and the exclusive distributor of certain brands of beer to South Florida retailers. Goicoechea Affidavit at ¶ 4. Its customers include grocery stores, convenience stores, gas stations, restaurants and bars, as well as several airlines and cruise lines. *Id.* at ¶¶ 8, 14. Over 95% of the beer Gold Coast distributes is produced outside of Florida. *Id.* at ¶ 7.

Gold Coast's business model is as follows. Gold Coast places bulk orders of beer based on highly accurate forecasts of its customers' needs, which are derived from customers' sales histories.[4] *Id.* at ¶ 5. After placing an order, Gold Coast arranges and pays for the shipment of beer from the supplier to its refrigerated warehouses in Florida. *Id.* at ¶¶ 7, 9, 10. The company takes title to the beer when it arrives at its warehouses. *Id.* at ¶¶ 5, 11. Then, after retailers place orders with Gold Coast, Gold Coast employees load the beer onto refrigerated trucks to be delivered to the customers. *Id.* at ¶¶ 10–12, 15, 18; Barsky Deposition, 12:14–20. Gold Coast generally stores beer in its warehouses for at most two to three weeks due to its perishable nature and Gold Coast's desire to deliver fresh product. *Id.* at ¶ 19.

After the beer is loaded on to Gold Coast's refrigerated trucks, Gold Coast drivers deliver the product to the retailers. *Id.* at ¶ 17. Gold Coast, which delivers beer daily, employs four different kinds of delivery drivers: (1) package delivery drivers, who have set routes and transport cases of packaged and bottled beer; (2) draft delivery drivers, who have set routes and transport kegs of beer; (3) bulk delivery drivers, who have set routes and deliver large orders of packaged and bottled beer on pallets; and (4) swing delivery drivers, who have no set routes. *Id.* at ¶¶ 16, 19. Though their roles differ, every driver delivers beer produced outside of Florida.

---

[4] Gold Coast has longstanding relationships with most of its customers. *Id.* at ¶ 4.

*Id.* at ¶ 20. Additionally, Gold Coast, which is registered with the Federal Motor Carrier Safety Administration of the United States Department of Transportation, requires its delivery drivers to comply with all Motor Carrier Act safety regulations. *Id.* at ¶¶ 25, 27.

While all drivers deliver product to Gold Coast customers, draft delivery drivers have the additional task of picking up empty kegs from retailers on their routes, and generally pick up one empty keg for every full keg delivered. *Id.* at ¶ 22. The draft delivery drivers then take the empty kegs back to one of Gold Coast's warehouses, from where they are shipped to the brewer that originally supplied the keg. *Id.* The suppliers offer a monetary credit to Gold Coast for each keg it returns, and Gold Coast in turn offers a monetary credit to its customers for each keg they return. *Id.*

Eric Narbona was employed by Gold Coast as a draft delivery driver from September 15, 2006, to July 23, 2013, and transported kegs to and from customers in Boynton Beach, Delray Beach, West Palm Beach and Lake Worth, Florida. Plaintiff's Statement of Facts, ¶ 17. On October 11, 2013, Narbona filed suit against Gold Coast in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, alleging violations of the overtime provision of the Fair Labor Standards Act ("FLSA"). D.E. 1-2. Gold Coast removed the action to federal court on November 15, 2013, D.E. 1, and now moves for summary judgment.

<u>Legal Standard</u>

Summary judgment is authorized only when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proof, and the Supreme

Court explained in *Adickes v. S.H. Kress & Co.*, that when assessing whether the movant has met this burden, the court should view the evidence, any ambiguities therein and all factual inferences therefrom in the light most favorable to the party opposing the motion. 398 U.S. 144, 157 (1970); *see also Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir. 1967).

The party opposing summary judgment need not respond with evidence unless the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. But where the motion is properly supported, the party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; instead, the nonmoving party must show that there exists some genuine issue of essential fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents a genuine issue of material fact, the court must deny the motion. *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). This may be the case where the parties agree on the basic facts but disagree about the inferences that should be drawn from those facts, so long as both inferences are reasonable. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969); *Impossible Elecs. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

<u>Motor Carrier Exemption</u>

Gold Coast argues that the Motor Carrier Exemption exempts its employment of Plaintiff from the overtime provision of the FLSA as a matter of law. In response, Plaintiff argues that the

defense does not apply because his employment did not entail interstate transportation of beer.

An employer has the burden of proving the applicability of a FLSA exemption. *Klinedinst v. Swift Inv., Inc.,* 260 F.3d 1251, 1254 (11th Cir.2001). Under 29 U.S.C. § 213(b)(1), the overtime provision of the FLSA "shall not apply with respect to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). And under section 31502, the Secretary of Transportation has the power to establish qualifications and maximum hours with respect to employees engaged in "transportation" as defined in section 13501, which includes, *inter alia*, transportation of passengers or property by motor carrier between states.[5] 49 U.S.C. § 31502(a)(1); *id.* § 13501(1)(A).

The applicable regulations explain that the "exemption of an employee from the hours provisions of the Fair Labor Standards Act ... depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2. More specifically, the Motor Carrier Exemption extends to employees: (1) "employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under ... the Motor Carrier Act"; and (2) who "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on

---

[5] "The Department of Labor's jurisdiction under the FLSA and the Department of Transportation's jurisdiction under the Motor Carrier Act are mutually exclusive and there is no overlapping jurisdiction." *Morrison v. Quality Transports Servs., Inc.*, 474 F. Supp. 2d 1303, 1309 n. 2 (S.D. Fla. 2007) (citing *Morris v. McComb,* 332 U.S. 422, 437-38, 68 S.Ct. 131, 92 L.Ed. 44 (1947)). And it is immaterial whether the Secretary of Transportation actually exercises his or her power to regulate under the Motor Carrier Act; the Motor Carrier Exemption to the FLSA applies so long as the Secretary has the authority to regulate over the particular employee. *Id.* (citing *Spires v. Ben Hill County,* 980 F.2d 683, 686 (11th Cir.1993)).

the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id.*

Here, Plaintiff admits that Gold Coast is a carrier subject to the jurisdiction of the Secretary of Transportation under the Motor Carrier Act and that his employment entailed activities of a character directly affecting the safety of operations of motor vehicles. D.E. 31 at 7. Accordingly, the Court need only address whether Plaintiff transported property in interstate commerce within the meaning of the Motor Carrier Act.

For purposes of the Motor Carrier Act, purely intrastate transportation that amounts to one part of a continuous stream of interstate commerce qualifies as interstate transportation. *Walters v. Am. Coach Lines Of Miami, Inc.*, 575 F.3d 1221, 1229 (11th Cir. 2009); *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943) ("The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey."). "For this to be the case, there must be a 'practical continuity of movement' between the intrastate segment and the overall interstate flow." *Id.* (quoting *Walling*, 317 U.S. at 568); 29 C.F.R. § 782.7(b)(1). The critical factor in determining the essential character of the shipment is the shipper's "fixed and persisting intent" at the time of shipment. 29 C.F.R. § 782.7(b)(2); *Mena v. McArthur Dairy, LLC*, 352 F. App'x 303, 306 (11th Cir. 2009).

Plaintiff argues that a shipper's intent is determined with reference to a three-part test contained in 29 C.F.R. § 782.7. Pursuant to that test, a shipper who temporarily stores property in a warehouse does not intend for that property to continue beyond the storage terminal as part of one continuous stream of commerce if: (1) "at the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific

destination beyond the terminal storage"; (2) "the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated"; and (3) "transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage." 29 C.F.R. § 782.7. But since the codification of that regulation, the Interstate Commerce Commission ("ICC") has espoused a more flexible approach in which a shipper's fixed and persisting intent is ascertained "from all the facts and circumstances surrounding the transportation." *Armstrong World Indus., Inc. v. I.C.C.*, 2 I.C.C.2d 63, 69 (Apr. 3, 1986); 1992 Policy Statement, Ex Parte MC No. 207, 8 I.C.C.2d 470, 473, 1992 WL 122949 (May 8, 1992) ("Whether the shipper has a 'fixed and persisting intent' that the merchandise continue in interstate or foreign commerce from or to an out-of-State origin or destination, via a warehouse or distribution center, is ascertained from all the facts and circumstances surrounding the transportation.").

In light of the more recent approach favored by the ICC, the Eleventh Circuit has rejected the three-factor test and instead favors the more flexible approach taking into consideration all facts and circumstances. *See Walters*, 575 F.3d at 1229 (ignoring the three-factor test and emphasizing that courts are "guided by practical considerations" in determining whether an employee's activities were part of interstate commerce for purposes of the Motor Carrier Act"); *Mena*, 352 F. App'x at 306 n. 3 (explicitly rejecting the three-factor test and adopting the more practical approach); *see also Roberts v. Levine,* 921 F.2d 804, 812 (8th Cir.1990) (declining to adopt the "outmoded" three-part test); *California Trucking Ass'n v. I.C.C.,* 900 F.2d 208, 213 (9th Cir.1990) ("Even though the ICC has never explicitly stated that it was abandoning the more structured [1957] test, it appears that its use of that standard has been refined, if not phased

-10-

out."); *Central Freight v. I.C.C.,* 899 F.2d 413, 421 (5th Cir.1990) (stating that the ICC "appears to have implicitly recharacterized the applicable test"); *cf Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 570 (1943) (quoting Swift & Co. v. United States, 196 U.S. 375, 398 (1905)) ("[C]ommerce among the states is not a technical legal conception, but a practical one, drawn from the course of business.").

In *Mena v. McArthur Dairy, LLC*, the Eleventh Circuit affirmed the District Court's grant of summary judgment in favor of the defendant based on facts substantially similar to those in the instant matter. 352 F. App'x 303, 307 (11th Cir. 2009). As here, the defendant in *Mena* would arrange for the shipment of mostly out-of-state refrigerated products to its Florida warehouse and would then deliver those products to its Florida customers after a short storage period. *Id.* The Court, considering all the relevant facts, found there to be no genuine issue that the defendant intended its product to move through its warehouse and to its customers as one continuous stream of interstate commerce. *Id.* The Court stressed three facts in particular: (1) the products were perishable and usually of a short shelf-life; (2) the products were pre-packaged and not altered once they reached the defendant's warehouse; and (3) the defendant placed orders based on standing orders and customers' projected needs as estimated from their purchase histories. *Id.*

The material undisputed facts here are largely the same. First, though not as perishable as dairy products, beer, which Gold Coast stored and transported in refrigerated environments, has a fixed shelf-life. Goicoechea Affidavit at ¶¶ 10, 18, 19. And while the length of that shelf-life is not apparent from the record, Gold Coast's beer was generally stored in its warehouses for at most two to three weeks. *Id.* at ¶ 19; *see Collins v. Heritage Wine Cellars, Ltd.*, 07-CV-1246, 2008 WL 5423550, at *18 (N.D. Ill. Dec. 29, 2008) *aff'd,* 589 F.3d 895 (7th Cir. 2009) (finding

that the shipper intended wine to continue to its customers as part of one continuous stream of interstate commerce notwithstanding that the wine was stored in the shipper's warehouse for up to one month); *Roberts v. Leonard W. Levine,* 921 F.2d 804, 814 (8th Cir.1990) (finding that the shipper intended its product to continue to its customers as part of one continuous stream of interstate commerce notwithstanding a storage period of two to six months). Second, as in *Mena*, Gold Coast did not at any point alter or modify the kegs. Goicoechea Affidavit at ¶ 10; *see* 1992 Policy Statement, 1992 WL 122949, at *2 (the absence of alterations and modifications evidences that the shipper intended the product to continue to its customers through the storage terminal as part of one continuous stream of interstate commerce); *Collins*, 2008 WL 5423550, at *16 (same). Lastly, though Gold Coast's purchase orders were not based on standing customer orders, its orders were based on highly accurate forecasts of customers' needs that were derived from its longstanding customers' sales histories. Goicoechea Affidavit at ¶¶ 4, 5; *see* 1992 Policy Statement, 1992 WL 122949, at *2 ("[T]he shipper [need] not know in advance the ultimate destination of specific shipments [if] it bases its determination of the total volume to be shipped through the warehouse on projections of customer demand that have some factual basis, rather than a mere plan to solicit future sales within the State."); *Rodriguez v. Pan & Plus Baking, LLC*, 12-23193-CIV, 2013 WL 1681839 (S.D. Fla. Apr. 17, 2013) ("The fact that the shipments did not all correspond to specific customer orders does not, by itself, support a finding that there was no fixed and persisting intent to ship goods in interstate commerce."); *see also Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 570 (1943) ("We do not mean to imply that a wholesaler's course of business based on anticipation of needs of specific customers, rather than on prior orders or contracts, might not at times be sufficient to establish that practical continuity in transit

necessary to keep a movement of goods 'in commerce' within the meaning of the Act.").

Additional undisputed facts further evidence that Gold Coast intended its beer to continue to its customers as part of one continuous stream of interstate commerce. Specifically, Gold Coast was responsible for arranging and paying for the transportation of beer to and from its warehouses. Goicoechea Affidavit at ¶ 9; *see* 1992 Policy Statement, 1992 WL 122949, at *2 (the shipper's payment for, and control of, transportation of the product to and from the warehouse evidences that the shipper intended its product to continue to its customers as part of one continuous stream of interstate commerce); *Collins*, 2008 WL 5423550, at *16 (same). Additionally, not only did Gold Coast own and control the warehouses in which it stored its beer, but it also exercised complete dominion over the product while it was within its warehouses. Goicoechea Affidavit at ¶¶ 10, 11, 15; *see* 1992 Policy Statement, 1992 WL 122949, at *2 (the shipper's ownership of the warehouse evidences that it intended its product to continue to its customers as part of one continuous stream of interstate commerce); *Collins*, 2008 WL 5423550, at *16 (same).

In summary, the material undisputed facts show that nearly all the beer Gold Coast distributed in Florida was shipped to Gold Coast's warehouses from other states. Gold Coast did not order that beer with a mere plan to solicit sales in the future; instead, its orders were based on highly accurate projections of customers' needs, which were derived from their purchase histories. Additionally, Gold Coast had complete control of the beer from the time it left the supplier to the time it was delivered to the retailers, and it never altered or modified the product. Though the beer stopped in Gold Coast's warehouses before it reached the retailers, it was stored in those warehouses for at most two to three weeks. Considering these undisputed facts, there is

no genuine issue that Gold Coast intended for the beer to continue to its customers as part of one continuous stream of interstate commerce. Accordingly, the short storage period constituted a mere interruption, but not a termination, of the interstate journey of the product.

But even assuming *arguendo* that this was not the case, the Motor Carrier Exemption applies because Narbona indisputably picked up empty kegs from retailers on his route and delivered those empty kegs to Gold Coast's warehouses, from where over 95% of them were delivered to suppliers outside of Florida. Goicoechea Affidavit at ¶¶ 7, 22. This, by itself, is sufficient to exempt Gold Coast's employment of Narbona from the overtime provision of the FLSA. *See Opelika Royal Crown Bottling Co. v. Goldberg,* 299 F.2d 37, 40–42 (5th Cir.1962) (the shipper's pick-up and return of empty bottles to the warehouse constituted interstate transportation where, from the moment of pick-up, the empty bottles had an intended final destination to an out-of-state facility); *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 224 (2d Cir. 2002) (same); *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992) (same). Accordingly, either because Narbona's transportation of full kegs constituted the last leg of one continuous stream of interstate commerce into Florida, or because Narbona's transportation of empty kegs constituted the first leg of one continuous stream of interstate commerce out of Florida, there is no genuine issue that Narbona's employment entailed the transportation of property in interstate commerce. As such, the Motor Carrier Exemption to the overtime provision of the FLSA applies as a matter of law.

## CONCLUSION

In accordance with the foregoing, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion to Strike, (D.E. 26), is DENIED.

Further, Gold Coast's Motion for Summary Judgment, (D.E. 21), is GRANTED; Summary Judgment is hereby GRANTED in favor of Gold Coast and against Plaintiff. Gold Coast's Motion *in Limine*, (D.E. 24), is DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 14th day of July, 2014.

UNITED STATES DISTRICT JUDGE

cc:
counsel of record via cm/ecf;